Thomas H. Bienert, Jr., SBN 135311
James D. Riddet, SBN 39826
Whitney Z. Bernstein, SBN 304917
**BIENERT | KATZMAN PC**
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701
Email: tbienert@bienertkatzman.com
       jriddet@ bienertkatzman.com
       wbernstein@ bienertkatzman.com

*Attorneys for Mohammed Abdul Qayyum*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-04683-GPC-3 |
| Plaintiff, | Hon. Gonzalo P. Curiel<br>Date: June 26, 2019<br>Time: 2:30 p.m. |
| v. | |
| MOHAMMED ABDUL QAYYUM, | **REPLY IN SUPPORT OF MOTION TO SUPPRESS STATEMENTS AND HOLD AN EVIDENTIARY HEARING** |
| Defendant. | |

I.  **Introduction.**

FBI Agents Chabalko and Pearson interrogated Mr. Qayyum at his home on September 9, 2016. They did not video record this interaction. They did not audio record this interaction. According to AUSA Melanie Pierson, no notes exist from this interaction. At the time this motion was filed, the only government recollection of this interrogation disclosed to defense counsel was captured in Agent Chabalko's 302 Report.[1]

After filing this motion, on June 1, 2020, the government disclosed Agent Chabalko's October 31, 2018 testimony about this interaction. On June 9, 2020, the government disclosed additional information, subject to a restrictive protective order, that bears directly on this motion. Mr. Qayyum has since asked whether any other relevant discovery exists, but as of the time of this filing, the government has yet to answer.

In his May 15, 2020 motion, Mr. Qayyum demonstrated that his answers to the FBI's interrogation on September 9, 2016 should be suppressed under *Miranda* and as involuntary. Motion to Suppress Statements and Hold an Evidentiary Hearing, Dkt. 162-1 ("Motion"). The government agrees with Mr. Qayyum as to both the well-defined body of law that applies to custodial interrogations and involuntary statements and also that an evidentiary hearing is appropriate. Government Opposition to Motion to Suppress, Dkt. 174 ("Opp'n") at 2, 4-5, 8, 11. The government does not dispute that the interrogation, as described by Mr. Qayyum, would warrant suppression of his statements both under *Miranda* and also as involuntary. Instead, through the declaration of just one of the interrogating agents, the government simply disputes certain critical facts. Declaration of FBI Special Agent Charles W. Chabalko IV, Dkt. 174-1 ("Chabalko Decl."). To decide Mr. Qayyum's motion and determine what occurred, this Court must hear testimony from and the judge the credibility of relevant witnesses.

II.  **Mr. Qayyum's statements were taken in violation of *Miranda*.**

Mr. Qayyum argued that his statements must be suppressed because they were taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). *See* Motion at 8-11. Mr. Qayyum explained how the atmosphere on September 9, 2016 was dominated by federal agents in

---

[1] *See* ADCONION-DISC02-REPORTS-000609-000610.

control of the interrogation and how an objective analysis of the facts indicate that Mr. Qayyum reasonably believed that he was confined and in custody. *Id.* Further, it is undisputed that the agents failed to tell Mr. Qayyum, who is not a citizen and had never previously had any law enforcement contact, that he was a target of their investigation, could refuse to speak to them, could consult an attorney before speaking to them, or could refuse to allow them to enter his apartment. *See, e.g.*, Declaration of Mohammed Abdul Qayyum, Dkt. 162-2 ("Qayyum Decl."), ¶ 9. It is similarly undisputed that the agents never read Mr. Qayyum any *Miranda* warnings. *See* Motion at 11-12; Qayyum Decl., ¶ 29.

The government does not dispute that the interrogation, as described by Mr. Qayyum, would constitute a violation of his rights. Rather, the government's opposition rests on the position that no *Miranda* violation occurred because Mr. Qayyum was not in custody; this position hinges entirely on crediting the facts the government asserts. Opp'n at 6-8. It claims that the agents were invited in as opposed to "demanding entry pursuant to a search warrant" (when no search warrant existed), "did not restrain Qayyum with force or by threats" and "spoke in a professional tone," "never isolated" him, and "at some point . . . offer[ed] Qayyum the option to stop the discussion and go to work." Opp'n at 6; Chabalko Decl., ¶¶ 3, 4, 5, 6, 7. Because of these four contested factual assertions, the government argues that Mr. Qayyum was not in custody and no *Miranda* warnings were required. *Id.*

Mr. Qayyum flatly contradicts each of the government's predicate facts. *See, e.g.*, Motion at 7 (describing how Agent Chabalko made Mr. Qayyum aware of his firearm as the conversation escalated); Motion at 7, 10 (describing how agents repeatedly aggressively told Mr. Qayyum that he was guilty of what they accused him of, was going to jail, and would be away from his family); Qayyum Decl., ¶¶ 17, 18, 22, 26 (same); *id.*, ¶¶ 14, 18 (describing agents' escalating voices and demeanor).

To decide Mr. Qayyum's motion, the Court must hold an evidentiary hearing and evaluate testimony from relevant witnesses.

**III.    Mr. Qayyum's statements were involuntary.**

Mr. Qayyum additionally argued that his statements were the product of the agents'

psychological pressure and thus involuntary. Motion at 12-14; *see also Hutto v. Ross*, 429 U.S. 28, 30 (1976); *Malloy v. Hogan*, 378 U.S. 1, 7 (1964); *Townsend v. Sain*, 372 U.S. 293, 307 (1963), *overruled on other grounds* in *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992); *United States v. Harrison*, 34 F.3d 886, 891-92 (9th Cir. 1994); *United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir. 1981) ("Law enforcement conduct which renders a confession involuntary does not consist only of express threats so direct as to bludgeon a defendant into failure of the will. Subtle psychological coercion suffices as well, and at times more effectively, to overbear a rational intellect and a free will." (internal quotations omitted); *United States v. Miller*, 984 F.2d 1028, 1030-31 (9th Cir. 1993). Mr. Qayyum established that the agents exerted subtle psychological coercion through their conduct and speech. Motion at 12-14; *see also, e.g.*, Qayyum Decl., ¶¶ 7, 8, 9, 10, 14, 15, 16, 17, 18, 22, 23, 24, 25, 27, 30. He further explained that, like in *Tingle*, the agents here became increasingly aggressive and threatening when he denied their allegations, told him that he would be away from his family, and that if he continued to deny their allegation he would be in jail for twenty years. Motion at 13; Qayyum Decl., ¶¶ 22, 26. He also explained that, like in *Harrison*, the agents here told him he would be in jail for twenty years and away from his family if he did not admit to what they alleged and agree to help them. *Id.*

The government does not dispute that the interrogation, as experienced by Mr. Qayyum, would render his statements involuntary. Rather, again, the government's opposition is premised on its version of the facts. Opp'n 8-11. The government does not attempt to address each incidence of psychologically coercive statements and actions that Mr. Qayyum described. Opp'n at 8-9 (selectively summarizing just three examples of the agents' psychological coercion). Instead, the government disputes that the agents told Mr. Qayyum that he could face twenty years in jail or removal from his family. *Id.* at 9; Chabalko Decl., ¶ 8. The government also contends that Mr. Qayyum exercised free will and rational intellect because he decided how to respond to questions and because he later responded to Agent Chabalko's communications before engaging an attorney. Opp'n at 8-9; Chabalko Decl., ¶¶ 8, 9, 10. But the government fails to explain how either of these assertions overcome the agents' psychological coercion during the September 9, 2016 interview. Finally, while the government

attempts to distinguish *Tingle* and *Harrison*, this again depends on disbelieving Mr. Qayyum's sworn declaration and instead crediting the government's contested factual assertions.

The government does meet its burden to establish that Mr. Qayyum's statements were voluntary by disputing selective facts. *See Lego v. Twomey*, 404 U.S. 477, 489 (1972). To decide Mr. Qayyum's motion, the Court must hold an evidentiary hearing and evaluate the testimony and credibility of relevant, percipient witnesses.

**IV. In advance of an evidentiary hearing, the Court should compel the government to disclose requested discovery and allow Mr. Qayyum an opportunity to be heard on the confidential discovery.**

In advance of the evidentiary hearing, Mr. Qayyum requests: (1) any additional discovery related to the government's interrogation of Mr. Qayyum; (2) any other statements, recordings, reports, or writings, including but not limited to any documents, notes, reports, recordings, messages, voicemails, emails, calendars, grand jury testimony, etc., related to the government's interrogation of Mr. Qayyum; and (3) a government response to the question of whether the FBI, government, or agents ever had any written notes of their interrogation of Mr. Qayyum, including but not limited to any documents, notes, reports, recordings, messages, voicemails, emails, calendars, grand jury exhibits, etc., and (3a) if so, when those notes ceased to exist and why.

Mr. Qayyum initially requested discovery related to the FBI's interrogation via email correspondence to the government beginning on January 14, 2020. On January 15, 2020, the government responded that the interview was not recorded, the report names all persons present, no documentation regarding contact with Mr. Qayyum other than the September 6, 2016 interview had been found, and no rough notes were located. On January 16, 2020, the government again confirmed that no rough notes of the interview exist, but informed that it did discover additional communications between the FBI and Mr. Qayyum (*see* Chabalko Decl., Exhibit A). On the basis of this information and the discovery disclosed, Mr. Qayyum filed his motion on May 15, 2020.

Subsequent to filing his motion, on June 1, 2020 the government first disclosed sworn

testimony by Agent Chabalko on October 31, 2018 describing his September 9, 2016 interrogation of Mr. Qayyum. That same day, Mr. Qayyum specifically requested the above three categories of additional discovery and information. As of this filing, the government has yet to respond to these three requests. Therefore, Mr. Qayyum moves the Court to compel the disclosure of this material prior to determining the motion or holding an evidentiary hearing.

Further, the government disclosed "confidential" additional discovery highly relevant to this motion on June 9, 2020.[2] Prior to disclosing this information, the government filed an *ex parte*, in camera application to redact the discovery and obtain a protective order. The court granted the government's application and imposed a narrow and unduly restrictive protective order on June 8, 2020. The protective order prevents Mr. Qayyum from sharing the documents or their contents with investigators, witnesses, or the broader defense group, and thereby severely limits Mr. Qayyum's ability to investigate the government's alternate facts as put forth in its Opposition and Chabalko's Decl., question appropriate witnesses, and prepare for a motion hearing or evidentiary hearing. Unless the protective order is modified, Mr. Qayyum is unable fully argue this motion and vindicate his rights. Thus, prior to the Court hearing argument on or deciding this motion, and prior to any evidentiary hearing, Mr. Qayyum requests an opportunity to be heard regarding both this discovery's redactions as well as the protective order's restrictions.

**V.   Conclusion.**

As indicated above, material factual disputes remain regarding the issue of custody, voluntariness, and government coercion. To decide Mr. Qayyum's motion, this Court should hold an evidentiary hearing and receive testimony from and judge the credibility of relevant witnesses. In advance of deciding this motion, this Court should also order the government to provide the requested discovery and allow Mr. Qayyum an opportunity to be heard regarding the protected discovery and associated protective order.

---

[2]   Mr. Qayyum believes that Dkts. 171-173 contain the government's *ex parte*, in camera motion for a protective order and related Exhibits A and B, but has no way to confirm.

Respectfully submitted,

Dated: June 12, 2020                    BIENERT | KATZMAN PC

*s/ Whitney Z. Bernstein*
Thomas H. Bienert, Jr.
James Riddet
Whitney Z. Bernstein
Attorneys for Mohammed Abdul Qayyum

# **CERTIFICATE OF SERVICE**

Counsel for Defendant Mohammed Abdul Qayyum certifies that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

David W. Wiechert
Jessica C. Munk
William J. Migler
Attorneys for Jacob Bychak

Randy K. Jones
Attorney for Mark Manoogian

Gary Lincenberg
Naeun Rim
Attorneys for Petr Pacas

Melanie Pierson
Sabrina Feve
Randy Grossman
Assistant U.S. Attorneys

Respectfully submitted,

Dated: June 12, 2020         BIENERT | KATZMAN PC

*s/ Whitney Z. Bernstein*
Thomas H. Bienert, Jr.
James Riddet
Whitney Z. Bernstein
Attorneys for Mohammed Abdul Qayyum